Judgment, so far as it directs payment of the $1,200 to the mortgagee on account of the mortgage indebtedness, is reversed, with costs, and the judgment modified by providing therein in place of the payment of the said $1,200 to the mortgagee that the same be paid to the appellant.

---

CELIA REILLY, as Administratrix, etc., of DAVID REILLY, Deceased, Appellant, *v.* TROY BRICK COMPANY, Respondent.

*Negligence — injury to one working in a brick yard from a bank of earth falling upon him — when the master is not bound to remove the crest of the bank, or to terrace it, or to employ a workman to look for slides.*

A brick manufacturing company drew its supply of clay from a bank several hundred feet long and sixty-five or seventy feet high. The bank was not perpendicular, the crest thereof being about twenty feet back of a vertical plane passing through the foot thereof. The bank was left in this condition by a slide which took place in November, 1903. In June, 1904, at which time the bank was not being worked and the supply of clay was being taken from that which fell in 1903, the bank fell, killing one of the employees of the brick company.

In an action brought against the brick company to recover the damages resulting from the employee's death, it was

*Held,* that the trial court properly dismissed the complaint;

That the duty of the defendant to furnish a reasonably safe place for its workmen was commensurate with existing conditions and the natural and inherent dangers which pertained to the bank in question, and which might have been obviated by the exercise of reasonable care, and that it was not chargeable with negligence because of its failure to remove the crest of the bank by dynamite, or to terrace or slope the face of the bank, or because it failed to provide a watchman whose exclusive duty it was to be on the lookout for slides.

APPEAL by the plaintiff, Celia Reilly, as administratrix, etc., of David Reilly, deceased, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Rensselaer on the 11th day of July, 1905, upon the dismissal of the complaint by direction of the court after a trial at the Rensselaer Trial Term.

*G. B. Wellington*, for the appellant.

*C. C. Van Kirk*, for the respondent.

Judgment unanimously affirmed, with costs, upon the opinion of COCHRANE, J., at the Trial Term.

The following is the opinion of Mr. Justice COCHRANE, delivered at the Rensselaer Trial Term:

COCHRANE, J.:

On the 3d day of June, 1904, David Reilly lost his life while in the employ of the defendant in a clay bank used by the defendant in connection with the manufacture of brick. This bank extended from south to north, then curved to the west, and presented a face several hundred feet in length in its entirety. Its height was sixty-five or seventy feet. The face of the bank was not perpendicular, but the crest thereof receded about twenty feet from an imaginary vertical plane passing through the foot of the face. The bank consisted for the most part of clay resting on a substratum of sand. At the time of the accident Reilly and some of his fellow-workmen were working on the floor of the bank near the curve above referred to, and from ten to twenty feet from the slope of the bank. The complaint alleges that "suddenly and without warning said sand and clay bank gave way and he, said David Reilly, was buried beneath tons of clay, sand and earth, and did then and there meet his death." The bank began to give way one hundred feet or more south of where Reilly was working. One of the workmen, who had left the bank temporarily, while returning saw the beginning of the slide at this southern point and gave the alarm to the workmen. The slide carried down a large portion of the bank extending northerly from the point where it commenced to descend to a point behind where Reilly was at work, precipitating in its descent thou-

sands of tons of earth of a thickness of about twenty feet and causing the death of three workmen, including Reilly. In the preceding November a large slide had taken place in this bank, but only about one-half as extensive as the one in question. The deceased had worked there for a number of years and was perfectly familiar with the conditions and surroundings. Intermediate the two slides of 1903 and 1904, no change whatever was made in the face of the bank. Such clay as was needed for the manufacture of brick was taken from that which fell in November, 1903, and it was this work in which Reilly was engaged at the time of his death. Seven men were thus employed working in two gangs shovelling the loose clay into carts which when loaded were drawn to the kiln. At the time of the first slide there was dampness and moisture in the substratum of sand underlying the clay, but there is no evidence that any dampness or moisture in the stratum of sand underlying the clay which fell in 1904 existed at this latter time. Such sand was concealed by the earth which had fallen in 1903 and the evidence is that such earth had not been sufficiently removed to expose to view the underlying sand at the time of the slide in question. There is some evidence of the presence of water in the bank and there was a natural gulley some distance back from the crest of the bank and on the top thereof in which prior to the first slide a witness had seen water, but the same witness testified that there was an outlet to the gulley and no place for standing water.

The duty of the defendant to furnish a reasonably safe place for its workmen was commensurate with existing conditions and the natural and inherent dangers which pertained to the bank in question and which might have been obviated by the exercise of reasonable care. It is not claimed in this case that the defendant committed any affirmative act of negligence but that it omitted certain precautions which reasonable prudence required. It is urged by the plaintiff that the defendant failed in its duty to make the bank safe because it did not remove the top thereof. The plaintiff refers to two methods of removing the top of a bank while working the same, viz., by the use of dynamite and what is known as the bench method, which is the removal of the top in such a way as to create a terrace or slope from the top down. Such methods as distinguished from the ordinary method of undermining are sometimes

practiced when the bank is being used in the ordinary way for the special purpose of precipitating clay in comparatively small quantities to be gathered up from time to time for use in the process of brick making. But it must be remembered that this bank was not being operated or worked in the ordinary sense of the term. The face of this bank was as it had been left by nature after the slide in 1903. No undermining process had been resorted to. The plaintiff's witness Ferguson, who described these two methods of dynamiting and benching, also testified that if the clay was already down upon the floor of the yard neither one of these methods was used until such clay was removed. There is no evidence in the case of the use of either dynamite or of the bench method except as a substitute for the ordinary process of undermining when a bank is being worked for the ordinary purpose of procuring clay for immediate use. On such occasions, of course, the precipitations are in comparatively small quantities and are made from time to time. I think it would be rather exacting to hold that the defendant is liable for an omission of duty in not removing the whole of the top of this bank. There had been no interference with the bank and as has been seen the face or slope thereof from the perpendicular was equal to nearly one-third of the actual height thereof. The contention that the top of the bank should have been removed involves the proposition that the entire top thereof from the extreme southerly point around the curve to the extreme westerly point, a distance of hundreds of feet, should have been removed. And the extent to which such removal would have been necessary in order to have obviated the slide is entirely conjectural. Reasonable prudence upon the part of the defendant in this case under the circumstances which here existed did not require the removal of the entire top of the bank to an extent absolutely undefined and imaginary.

It is further urged that the defendant failed in its duty of inspection which it owed to the deceased. I am at a loss to see how any inspection would have revealed the fact that this bank was about to fall. There is no suggestion in the evidence of any flaw or crack on the top or side of this or any other bank or any other indication of danger which would be discoverable before the fall actually occurred. What the plaintiff means, however, by an inspection is that the defendant should have employed a watchman to watch the

bank for the greater safety of the employees and this contention is based on the fact that while working such banks there is usually what is termed a bank boss whose duties vary according to the nature of the work and number of men employed and otherwise. But it does not appear that it is the exclusive duty of a bank boss to watch for landslides. He participates in the ordinary work of the workmen but has in mind their safety and pays attention to the bank with reference thereto. And here again the plaintiff loses sight of the fact that no undermining was in process at the time of the accident nor had there been for months. The duties of a bank boss to look out for the safety of his men according to the evidence in this case are confined to such times as they are engaged in the work of actually precipitating clay for immediate use, a situation which is entirely different from the one which existed here at the time of the accident. Two witnesses, Duffney and Nolan, testified for the plaintiff that an impending slide gives warning of its approach by small fragments of clay and sand becoming detached and dropping. Duffney on his cross-examination confines his testimony on this point to the case of a slide which is occasioned by undermining for the purpose of causing the precipitation. Nolan's testimony is exceedingly indefinite and unsatisfactory. He never witnessed but one large slide. On that occasion he says if a person had been in the bank he could not have escaped. At one time he testified that a slide comes "just as quick as lightning." Assuming, however, that the testimony of these witnesses justifies an inference that slides give a warning of four or five minutes, I do not think that the defendant can be charged with negligence for not anticipating this slide and procuring a watchman to watch the bank. It is not customary to take such precaution. On the contrary, the undisputed testimony is that it is customary not to do so. In only one other instance does such precaution seem to have been taken and in that case without avail, as a life was lost notwithstanding the precaution. If a watchman had been on guard whose exclusive duty it was to be on the lookout for this slide his duty would have taken him to different parts of the bank for the protection of both of the gangs of men in question, and to have prevented this catastrophe by giving sufficient warning, it would have been necessary for the remarkable coincidence to have existed that

at the particular time just preceding the fatal moment his gaze should have been directed toward the particular place in this large area where the unexpected movement began to manifest itself.

The difficulty with the plaintiff's case is that the accident resulted solely from a manifestation of nature. It was an act of Providence which was not contributed to in any respect by any human agency. The bank was just as nature left it by the slide of 1903. Not a particle of earth was thereafter removed from the face thereof. The bank was different in its features, contour and characteristics after the slide of 1903 than it was before, and hence that slide was no indication or warning that another slide would occur. Under the evidence in this case the defendant did not omit any of the ordinary usages or precautions of the business or employment or any safeguards which prudent men in the exercise of reasonable caution should have provided and hence is not chargeable with negligence.

Complaint dismissed. _____